Sam H. NEWCOMER

v.

Robert E. COLEMAN, Marvin Palmer, Edmond McRae, Jr., Louis W. Johnson, and Salvatore LaBella, individually and as Commissioners of the Housing Authority of the City of Middletown, and the Housing Authority of the City of Middletown.

Civ. No. 14152.

United States District Court,
D. Connecticut.

Dec. 23, 1970.

Eugene N. Sosnoff, Sosnoff, Cooper & Whitney, New Haven, Conn., for plaintiff.

Robert L. Hurney, Middletown, Conn., for defendants.

## RULING ON MOTION TO DISMISS and MOTION FOR A PRELIMINARY INJUNCTION

BLUMENFELD, District Judge.

The plaintiff, Sam H. Newcomer, formerly served as Executive Director and Secretary of the Housing Authority of the City of Middletown until his dismissal from that position by vote of the Middletown Housing Authority Commissioners at a meeting on October 21, 1970.[1] In this suit against the Housing Authority and the five Housing Authority Commissioners, he contends that his dismissal violates his right to due process and equal protection of the laws, as guaranteed by the fourteenth amendment of the federal Constitution, in that he did not receive adequate notice or a fair hearing prior to his dismissal.[2] The plaintiff also alleges that this summary dismissal, occurring as it did in the midst of a heated controversy about the Housing Authority, has exposed him to considerable public criticism and scandal. As a result, he contends, his dismissal has damaged his reputation as a public housing director and has seriously jeopardized his capacity to pursue his career in the same or similar employment, since he has not been informed of the charges against him or been given the opportunity to rebut them in an appropriate forum.[3]

The plaintiff ultimately seeks a declaratory judgment that his dismissal from the Housing Authority was illegal and void, and a permanent injunction ordering his reinstatement to his former position. Plaintiff also seeks compensatory damages and punitive damages in the amount of $250,000. By the present motion in the instant action, plaintiff seeks a preliminary injunction restoring to him his position at the Housing Authority of Middletown pending the outcome of this litigation, as well as his lost wages and benefits. A hearing on this motion for preliminary injunction was held before this court on December 14, 1970.

This action is brought under 42 U.S.C. §§ 1983 and 1985(3) to redress the deprivation of rights, privileges and immunities secured to the plaintiff by the Constitution. Jurisdiction is alleged to exist under 28 U.S.C. §§ 1331 and 1343(1) and (3). The plaintiff also contends that this court has pendent jurisdiction over his second claim for relief which is based on state law and an interpretation of the terms and conditions of plaintiff's employment.[4]

---

1. The Housing Authority is a public body organized and existing pursuant to the laws of the State of Connecticut. Conn. Gen.Stats. § 8–38 et seq. Five Housing Commissioners are appointed by the Mayor in each municipality pursuant to § 8–41.

2. Plaintiff's claim that his dismissal violated his right to equal protection of the laws is based on the contention that the right to two weeks advance notice and a hearing prior to dismissal, provided in the personnel policies of the Housing Authority, is guaranteed to other employees and was discriminatorily withheld from plaintiff.

3. The controversy arose out of a report issued in early October 1970 by a special committee appointed by the Mayor of Middletown consisting of three members of the Common Council of the City of Middletown. The report was highly critical of the Housing Authority and accused the plaintiff of several acts of maladministration and misfeasance. This report, and the surrounding accusations, received extensive publicity in the Middletown press. The plaintiff's discharge occurred in the midst of this controversy, and by vote of the commissioners it was explicitly based "upon the recommendation of the Mayor's Investigating Committee," as reported in the minutes of the commissioners' meeting on October 21, 1970.

4. The provisions in the Personnel Policies of the Housing Authority secure to employees the right to two weeks notice and a hearing prior to dismissal, and further provide that employment shall be based "solely on merit, ability, and justice." It is plaintiff's contention that these provisions constitute material terms and conditions of his employment which were illegally breached by the defendants. In order to evaluate plain-

## I.

### Motion to Dismiss

The defendants have moved to dismiss this action on the grounds that this court lacks jurisdiction under either 28 U.S.C. §§ 1343(1) and (3) or 1331, and that plaintiff fails to state a claim upon which relief can be granted under 42 U.S.C. §§ 1983 and 1985(3).

■ In his complaint, the plaintiff alleges that the actions of the defendants have denied him his right to due process of law and deprived him of his salary of $15,870 per year. He also seeks $250,000 in punitive damages. Thus the matter in controversy exceeds $10,000, which the defendants do not dispute, and arises under the Constitution of the United States. This court, therefore, has jurisdiction of the controversy pursuant to 28 U.S.C. § 1331.[5]

Defendants' motion to dismiss for lack of jurisdiction is denied.

■ Defendants' contention that the plaintiff has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983 is rejected in light of the Second Circuit's decision in Birnbaum v. Trussell, *supra*, 371 F.2d 672. In that case, the court specifically held that § 1983[6] affords a right of action to a public employee to obtain relief for injuries suffered in consequence of his summary dismissal, without hearing, whenever there is a "substantial interest" involved in his discharge. *Id.* at 679. The substantial interests involved in Birnbaum were two: "reputation and the ability to pursue a profession effectively." *Id.* at 678 n. 13.

■ Plaintiff's complaint alleges that those same interests are at stake in the instant case,[7] and the fact that Mr.

---

tiff's constitutional claims, however, it is not necessary to interpret Connecticut statutes, the contract entered into by the Housing Authority and the United States Public Housing Administration in 1940, and the by-laws and personnel policies of the Housing Authority to determine whether these grant the plaintiff an absolute right under state law to notice and a hearing. The federal Civil Rights Act "does not protect rights guaranteed by state law. Stiltner v. Rhay, 322 F.2d 314 (9 Cir. 1963); O'Connor v. O'Connor, 315 F.2d 420, 422 (5 Cir. 1963); Ortega v. Ragen, 216 F.2d 561 (7 Cir. 1954) * * *." Birnbaum v. Trussell, 371 F.2d 672, 676 n. 7 (2d Cir. 1966).

5. Section 1331(a):
   "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."
   Whether or not this court also has jurisdiction under 28 U.S.C. § 1343 depends on whether a right of the plaintiff has been infringed which is a right "of personal liberty, not dependent for its existence upon the infringement of property rights." Hague v. CIO, 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939) (opinion of Mr. Justice Stone). In Eisen v. Eastman, 421 F.2d

560 (2d Cir. 1969), the Second Circuit left open the question whether the denial of due process in the dismissal of a governmental employee, without more, constitutes the deprivation of a right of personal liberty so as to afford jurisdiction under § 1343. *Id.* at 565. In a subsequent case, Judge Weinstein of the Eastern District of New York reviewed the authority in this Circuit and concluded that dismissal from public employment did involve rights of personal liberty. Taylor v. New York City Transit Auth., 309 F.Supp. 785, 789 (E.D.N.Y.1970). However, in view of the fact that jurisdiction is specifically alleged, and exists, under § 1331, determination by this court of the question posed by *Eisen* is unnecessary.

6. 42 U.S.C. § 1983:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

7. *See* paragraphs 16–22, 26, 32 and 33 of the complaint.

Newcomer was a public employee who has been summarily discharged is also specifically alleged. Therefore, plaintiff has stated a claim upon which this court can grant relief under 42 U.S.C. § 1983 and the defendants' motion to dismiss is denied. *See also*, Kletschka v. Driver, 411 F.2d 436 (2d Cir. 1969); Roth v. Board of Regents, 310 F.Supp. 972 (W. D.Wis.1970); Taylor v. New York City Transit Auth., *supra*, 309 F.Supp. 785; Lucia v. Duggan, 303 F.Supp. 112 (D. Mass.1969); Olson v. Regents of Univ. of Minn., 301 F.Supp. 1356 (D.Minn. 1969).

■ In his complaint, plaintiff Newcomer has alleged no specific facts to substantiate his claim that he has been denied equal protection of the laws and that, therefore, he has a claim for relief under 42 U.S.C. § 1985(3).[8] He does not allege a pattern of discrimination, or impermissible consideration of a race or class, or that state law has been unevenly applied. It so far appears that the actions taken by the defendants were directed only against the plaintiff as an individual, and not because he was a member of a class or race.[9] *See* Kletschka v. Driver, *supra*, 411 F.2d at 447. Therefore, the defendants' motion to dismiss with respect to plaintiff's claim for relief under § 1985(3) is granted, with leave for the plaintiff to amend his complaint if that should be deemed advisable.

## II.

### Motion for Preliminary Injunction

■■ The sole question before this court at this time is whether or not to grant the plaintiff some temporary relief pending the outcome of this litigation. A motion for a preliminary injunction is addressed to the discretion of the court. Santos v. Bonanno, 369 F.2d 369, 370 (2d Cir. 1966) (per curiam). The plaintiff must show that (1) he has a reasonable probability of succeeding at trial and that (2) if the preliminary injunction is denied, he will possibly suffer irreparable injury. See Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U. S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); Chappell & Co. v. Frankel, 367 F.2d 197, 202 (2d Cir. 1966) (en banc).

■ In order to show a reasonable probability of success at trial, the plaintiff need not establish an absolutely certain right to a favorable final decision. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953). Thus, while it is to be kept in mind that a hearing on a preliminary injunction is not a proceeding for full consideration of the merits, the evidence does demon-

8. See paragraphs 29, 30 and 31 of the complaint. The statute reads as follows: "(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

9. The court in Birnbaum v. Trussell, *supra*, dismissed the appellant's claim under § 1985(3) as insubstantial. The plaintiff had alleged that he was deprived of equal protection of the law in that he was fired because he was white, rather than a Negro. The court stated that: "It may very well be true that appellant would not have been discharged if he were a Negro. Nevertheless, the fact remains that other white doctors were not discharged. It is thus apparent that appellees cannot be charged with discriminating between whites and Negroes and discharging the former; nor does a simple showing of unequal application of the law make out a violation of Sec. 1985(3), even if it is malicious." *Id.* at 676.

strate a reasonable probability that the plaintiff will succeed at trial.

At the hearing before this court on December 14, the plaintiff presented evidence to substantiate his allegations that he was an employee of the Housing Authority of the City of Middletown, a public agency; that he was subjected to a summary dismissal without a hearing;[10] and that his name, reputation and possibilities for employment have been substantially tarnished by the circumstances and wide-spread publicity surrounding his discharge.[11]

If these facts are proven at trial, plaintiff will succeed in his claim that his right to due process was violated by his summary dismissal and that he must be afforded relief under the case of Birnbaum v. Trussell, *supra*, 371 F.2d 672.

In that case, a physician, employed by the New York Department of Hospitals, was summarily dismissed without a hearing on the basis of charges that he was prejudiced against Negroes. The Second Circuit stated that while public employees "have no absolute right to a hearing on discharge from public employment because government employment is a privilege and not a property right * * * the courts have become more inclined to consider the causes of discharge and the methods and procedures by which a dismissal is effected as it may bear upon reputation and the opportunity for employment thereafter." *Id.* at 677. The court held that Dr. Birnbaum suffered more than the loss of employment, and that when substantial interests in reputation and opportunity for future employment are involved[12] the discharge of a public employee cannot be based on arbitrary grounds or "without a procedure calculated to determine whether legitimate grounds do exist." *Id.* at 678. On the basis of this holding, the court reversed a dismissal of the complaint by the court below to allow development of Dr. Birnbaum's claim for relief.

In cases following *Birnbaum*, several courts have agreed with, applied and even extended the principle announced therein: Olson v. Regents of Univ. of Minn., *supra*, 301 F.Supp. at 1361 (dismissal of a maintenance employee) ("procedurally an employee in the public sector . . . should be entitled to an advance notice in writing of his termination, a written statement of the reasons therefor, and a reasonable time allowed within which to respond * * * [either in writing or by an informal appearance].") ; Lucia v. Duggan, *supra*, 303 F.Supp. at 117–118 (dismis-

10. It was attested to by both Mr. Newcomer and one of the Housing Commissioners that at the evening meeting of October 21, 1970, Mr. Newcomer himself requested a hearing, and that another commissioner moved to allow him a hearing prior to his discharge. Both proposals were defeated by a vote of the commissioners. In view of these rejections of a hearing it is difficult to accept the suggestion that the plaintiff himself thwarted his opportunity for a hearing on the very night of October 21, 1970. However, more evidence on this point may be developed at trial.

The defendants also raise the issue of the plaintiff's resignation, which he had tendered to the Chairman of the Housing Authority some months before. Presumably the commissioners could have acted on this resignation up until the date it was withdrawn, October 20, 1970. The fact remains that Mr. Newcomer was discharged by vote of the commissioners, not by an acceptance of his resignation.

11. The publicity and charges adverse to the plaintiff were generated around the report of the Special Investigating Committee appointed by the Mayor of Middletown. *See* footnote 3, *supra*. The plaintiff's discharge on the basis of these charges, without an opportunity to rebut them, has placed his career-related reputation directly in issue.

12. Not only was appellant Birnbaum discharged in the midst of accusations about his racial prejudice, the appellees apparently advised other City hospitals by letter not to employ him. *Id.* at 677.

While the commissioners took no such direct action against the plaintiff in the instant case, the publicity generated by the Mayor's special report is reasonably likely to have had a similar effect on plaintiff's reputation.

sal of untenured high school teacher) ("[w]hatever the derivation and scope of plaintiff's alleged freedom to wear a beard, it is at least an interest of his, especially in combination with his professional reputation as a school teacher, which may not be taken from him without due process of law"); Roth v. Board of Regents, *supra*, 310 F.Supp. at 980 (decision not to rehire a nontenured assistant professor) ("minimal procedural due process includes a statement of the reasons why the university intends not to retain the professor, notice of a hearing at which he may respond to the stated reasons, and a hearing if the professor appears at the appointed time and place"); Kletschka v. Driver, *supra*, 411 F.2d at 446 (physician transferred from Veterans' Administration Hospital in New York to Texas) ("[a]doption of plaintiff's argument [that he has a due process right to a hearing before transfer] would involve a considerable extension of the Birnbaum holding. * * * Here plaintiff was transferred, rather than discharged, and whatever publicity that was engendered by the transfer did not involve the especially objectionable area of racial aspersions. Indeed, it is not clear that there was any publicity concerning plaintiff's disputes with the hospital and school officials * * *. But while these facts distinguish our case from *Birnbaum* they do not necessarily lead to a different result. A transfer to a distant location might have as severe an effect on the career of a professional man as an outright discharge * * *. And a whispering campaign such as plaintiff alleges could well damage his ability to pursue his profession effectively by undermining his status in the medical community.")[13]

The plaintiff's case seems to fit squarely within this line of authority, since it appears from the evidence so far submitted that his dismissal by summary action of his public employers affected his interests beyond mere loss of a job. Under these decisions, he would have been entitled to an opportunity for a hearing before an impartial decisionmaker prior to his discharge, with notice of the charges to be considered at that hearing so that he might contest them.[14] In *Birnbaum*, the Second Circuit relied heavily on the fact that whatever injury the appellant suffered was a result of his being denied a hearing. The court stated that "a full hearing was the only way appellant's substantial interests could have been protected * * *." 371 F.2d at 679.

Since the plaintiff Newcomer was not provided with notice of the specific charges against him and a hearing prior to his discharge, there is a substantial probability that he will prevail at trial in asserting that he has been deprived of substantial interests without due process of law and must be afforded federal relief.

The possibility of irreparable injury is also present. Plaintiff is currently without employment and has been unable to obtain employment despite his efforts over the past two months. His reputation as a public housing officer is tarnished, and he may be unable to find a new job until he has been given an opportunity to confront the charges which formed the basis for his dismissal and to clear his name. Reinstatement by the Middletown Housing Authority pending a full and fair hearing on the issue of his discharge will serve to remove the possibility of irreparable injury which he now faces.

---

13. The court in *Kletschka* went on to state that this constitutional issue should be resolved only after a full hearing on the facts, and remanded that portion of plaintiff's claim for a further hearing in the district court. *Id.* at 446.

14. As for the proper standard which is to be applied to the dismissal of state employees in plaintiff's position, this court makes no ruling but refers to the standard provided by the Housing Authority's own Personnel Policies: "An employee who gives unsatisfactory service or who is guilty of violations, or [sic] regulations, shall be subject to dismissal."

Therefore, pending the outcome of this litigation, the plaintiff may not be discharged by the Housing Authority without first being accorded his right to notice of the charges against him and a full and fair hearing, in accordance with established concepts of due process.

So ordered.