Maurice M. **ROUMANI**, Plaintiff,

v.

Robert E. **LEESTAMPER** et al., Defendants.

Civ. A. No. 71–1098.

United States District Court, D. Massachusetts.

July 2, 1971.

As Amended Aug. 3, 1971.

Jonathan J. Margolis, Daniel D. Levenson, Boston, Mass., for plaintiff.

Morris M. Goldings, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION THAT PRELIMINARY INJUNCTION ISSUE

GARRITY, District Judge.

This case arises upon plaintiff's complaint under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that defendants' act in refusing to reappoint him to his teaching position at Worcester State College, a college organized under the laws of the Commonwealth of Massachusetts, has deprived him of rights guaranteed under the due process clause of the Fourteenth Amendment to the Constitution. Plaintiff seeks declaratory and injunctive relief and moved for a preliminary injunction to restrain defendants from terminating his contract until he has been afforded these due process rights. Defendants responded with a motion to dismiss the action for failure to state a claim upon which relief may be granted under Rule 12(b)(6),

Fed.R.Civ.P. Affidavits and agreed stipulations of fact were filed and the court held a hearing at which defendant Leestamper testified. Memoranda of law have been filed by both parties.

### Findings of Fact

1. Plaintiff has been employed at Worcester State College since September, 1969, as an Assistant Professor of Political Science, and is presently so employed by contract dated June 12, 1970.

2. Defendant Robert E. Leestamper is President of Worcester State College. The remaining defendants collectively comprise its Board of Trustees. They are appointed by authority of Mass.G.L. c. 15, § 20A, and are charged, pursuant to Mass.G.L. c. 73, § 19, with the responsibility of administering all state colleges in the Commonwealth of Massachusetts.

3. Under Section III(b) of the "Policy on Appointment, Promotion and Tenure," regulations promulgated by the Trustees on May 15, 1967 pursuant to authority granted them under Mass.G.L. c. 73, § 1, plaintiff, as a non-tenured professor in his second year of teaching at the college, was entitled to notification by December 15, 1970 if he was not to be reappointed for the academic year commencing September 1, 1971. Plaintiff did not receive such notification.

4. On March 1, 1971 plaintiff received a memorandum from Leestamper stating his intention to recommend renewal of plaintiff's contract for the 1971–1972 academic year.

5. On April 16 Leestamper met with plaintiff. At that meeting, he requested plaintiff's resignation for the academic year 1971–1972 and informed plaintiff that he would recommend to the tenured members of plaintiff's department that his contract not be renewed. He informed plaintiff that he was taking this action because he had received information contradicting representations made by plaintiff concerning the progress of his doctoral studies.

6. By letter dated April 20, plaintiff's counsel advised Leestamper that plaintiff did not intend to resign. The letter

further indicated counsel's expectation that, should the college seek to dismiss plaintiff, he would receive a formal statement of charges and a hearing with counsel present and other enumerated due process protections afforded.

7. By letter dated April 23, Leestamper acknowledged counsel's letter and stated that he would provide additional information to counsel upon further review of the matter.

8. President Leestamper decided shortly after April 21 to recommend to the Trustees that plaintiff's contract not be renewed. At no time was plaintiff advised that the matter would be referred to the Trustees, nor was he given an opportunity to appear before them.

9. Between April 23 and May 14 there was no communication of any kind between Leestamper (or any other member of the college administration concerned with this matter) and plaintiff or plaintiff's counsel. At no time was the matter of plaintiff's continuing status on the college faculty referred to the tenured faculty, as was discussed at the April 16 meeting.

10. By letter dated May 14, Leestamper informed plaintiff that he would not be reappointed to the position of Assistant Professor "because of your willful misstatements of fact in connection with your eligibility for the degree of Doctor of Philosophy from the University of London." In this letter, plaintiff was invited to attend a meeting with Leestamper on May 24 at which time he might present facts on his behalf. Plaintiff did attend a meeting with Leestamper on May 24, 1971, and did present certain facts relating to the progress of his doctoral studies. The defendants took no further action regarding the plaintiff's status following that meeting, and the plaintiff filed his Complaint with this Court.

*Conclusions of Law*

Plaintiff grounds his complaint upon the premise that the manner in which defendants have determined not to renew his contract, incontrovertibly action under color of state law, operates to deprive him of the specifically enumerated constitutional right to due process of law. 42 U.S.C. § 1983. Defendants take the contrary position that plaintiff's injury, if any, arises out of a contract dispute more properly litigated in the Superior Court of the Commonwealth of Massachusetts and is not colored by a constitutional claim sufficient to confer jurisdiction upon this court. Even if plaintiff has a readily available state forum in which to litigate these matters, he is not precluded from seeking a federal remedy here. See Monroe v. Pape, 1961, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492; McNeese v. Board of Education, 1963, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622.

In determining the scope of plaintiff's rights under the due process clause, it is necessary to recognize his situation at the time of his dismissal. Plaintiff was not tenured; thus, he was not specifically entitled to those procedures afforded tenured faculty under relevant state [1] and federal [2] law. Since he alleges no constitutionally impermissible motive underlying defendants' decision, those cases requiring administrative hearings where such allegations are present likewise would appear inapposite. See Ferguson v. Thomas, 5 Cir., 1970, 430 F.2d 852; Sindermann v. Perry, 5 Cir., 1970, 430 F.2d 939; Jones v. Hopper, 10 Cir., 1969, 410 F.2d 1323, 1327.

At the same time, plaintiff is in a markedly different position here than if he had been notified of his nonreappointment prior to the December 15 date set out in the Trustees' regulations. Had he been so notified, he would have been entitled only to a detailed written explanation of the reasons for non-reten-

---

1. Mass. G.L. c. 73, § 4B. See Board of Trustees, "Policy on Appointment, Promotion and Tenure," Tenure, § III (Adopted May 15, 1967).

2. Beattie v. Roberts, 1 Cir., 1971, 436 F. 2d 747.

tion, Drown v. Portsmouth School District, 1 Cir., 1970, 435 F.2d 1182, 1185, and not to a hearing. *Id.* at 1188. In *Drown,* however, the court in terms limited its decision "to the case of the nontenured teacher whose contract is not renewed during a probationary period." *Id.* at 1187.

The instant case clearly is not *Drown.* Here, plaintiff contends that the passing of the December 15 date operated to extend his contract or at least to justify an expectation on his part that his contract would be renewed for the 1971–1972 academic year; that defendants' decision to refuse to honor this implied agreement or to fulfill this expectation is akin to a discharge for cause; and, finally, that cause sufficient to remove him must be at least similar to that required to remove a tenured teacher, the determination of which has been surrounded with specific procedural safeguards. *See* footnote 1. Regardless of whether there is a binding contract here, the timing of plaintiff's release places him in a substantially disadvantaged position vis-a-vis those notified of non-reappointment in the prescribed manner.

In ascertaining the precise extent of this disadvantage and its due process implications, it is necessary to balance the competing interests of the plaintiff and of the college. Cafeteria & Restaurant Workers Union v. McElroy, 1961, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230; Nolan v. Scafati, 1 Cir., 1970, 430 F.2d 548, 550. Clearly the college has an interest in limiting its faculty to those persons who, in view of various permissible criteria, are found competent to instruct its students. Plaintiff has two arguably protectable interests. First, under the facts of this case, he has an expectancy of continued employment. See Bomar v. Keyes, 2 Cir., 1947, 162 F.2d 136, 139, cert. den. 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400. Plaintiff also has an indisputable interest in pro-

tecting his professional reputation. This is especially so in light of the strong channels of communication which exist within the national academic community, particularly within individual disciplines, and in light of the prevailing paucity of available teaching positions which places an added burden upon any discharged professor. The latitude permitted the college in securing a quality faculty need not be so broad as to allow for the possible sacrifice of an individual's professional future.

The appropriate test in determining whether due process protections adhere to a particular situation is well stated in Birnbaum v. Trussell, 2 Cir., 1966, 371 F.2d 672. There, the court, after analyzing several Supreme Court decisions, stated that "the principle to be extracted from these cases is that, whenever there is a substantial interest, other than employment by the state, involved in the discharge of a public employee, he can be removed neither on arbitrary grounds nor without a procedure calculated to determine whether legitimate grounds do exist." *Id.* at 678. In light of the absence of specific procedures in the instant case, the gravity of the allegations made by defendants, and their necessary impact upon plaintiff's professional reputation, his interests clearly merit greater procedural consideration than has been afforded. See Roth v. Board of Regents, W.D.Wis., 1970, 310 F.Supp. 972.[3] Plaintiff never has received a statement of the specific misrepresentations he is alleged to have made; nor has he been given an opportunity to present his own case and challenge that against him. The Trustees have provided detailed guidelines for removing a tenured professor for cause. Although plaintiff need not be given the full range of these protections, due process at least requires that he be given a particularized statement of charges and a hearing.

---

3. The court in *Roth* postulated that if the Constitution forbids decision-making based upon wholly false assumptions, a teacher ought to have a forum in which to challenge the factual sufficiency of these assumptions. *Id.* at 976. That logic appears applicable to these facts as well.

Finally, the hearing body must keep in mind the fact that the charges against plaintiff are only relevant insofar as they pertain to his academic qualifications and his competence to discharge his teaching duties. The hearing body may also consider the charges against the plaintiff insofar as they relate to the criteria established for faculty evaluation by the defendants in their "Policy on Appointment, Promotion and · Tenure" (Exhibit "B" to the Complaint). Clearly, certain types of misrepresentations made within an academic community would more seriously impair a professor's respect in the eyes of peers and students, and, consequently, his success in the classroom, than would others. The accusing party must demonstrate this relationship between the alleged acts and plaintiff's competence to teach, based upon the Board's criteria for evaluation.

Accordingly, a preliminary injunction shall issue enjoining defendants from refusing to renew plaintiff's contract to include the 1971–1972 academic year until they have provided him, previous to August 28, 1971, the date of expiration of plaintiff's current contract, with (a) a particularized statement of the charges against him, (b) an opportunity to be heard, with counsel, by the Board of Trustees of State Colleges, and (c) a notice of their decision. It is further ordered that any notation of the termination of plaintiff's contract which may have been made in records maintained by defendants be expunged.[4]

### PRELIMINARY INJUNCTION

This matter is before the court on plaintiff's motion for a preliminary injunction. On the basis of the findings of fact and conclusions of law stated by the court in its memorandum of decision that preliminary injunction issue, filed contemporaneously herewith, including findings that plaintiff has demonstrated reasonable likelihood of success on the merits and that he would suffer probably irreparable damage should a preliminary injunction not issue and that defendant will probably suffer no irreparable damage should an injunction issue,

It is hereby ordered, adjudged and decreed that pending final decision of this action the defendants Robert E. Leestamper, and John M. Cataldo, Howard C. Smith, William E. Aubuchon, Jr., Sylvia K. Burack, Jacob C. Darnell, Jr., Kenneth R. Fox, Charles C. Halbower, Philip L. Lowe, Howard W. Nickerson, Henry Scharoff, Thomas A. Sullivan, Mrs. Sol W. Weltman, Edward C. Moore, and Lawrence E. Dennis, as the Board of Trustees of State Colleges, their agents, servants, employees and attorneys and all other persons in active concert and participation with them who receive actual notice of the order by personal service or otherwise are enjoined from failing to renew plaintiff's contract on or before August 27, 1971 to include the 1971–1972 academic year unless they have previously provided him with (a) a particularized statement of the charges against him, (b) an opportunity to be heard, with counsel, by the Board of Trustees of State Colleges, and (c) a notice of their decision.

Defendants not having requested security for the payment of such costs and damages as may be incurred or suffered by having been wrongfully enjoined, and the likelihood of such costs and damages appearing to the court to be extremely remote, plaintiff will not be required to file bond unless defendants, within a reasonable time from the filing of this opinion, move for the posting of security with supporting affidavits indicating the possibility that they will incur damages and costs as a result of having been wrongfully enjoined.

---

4. For the reasons stated in this memorandum, defendants' motion to dismiss is denied.