Gilman J. CHASSE et al.,
Plaintiffs-Appellants,

v.

Robert E. CHASEN, et al.,
Defendants-Appellees.

No. 78–1103.

United States Court of Appeals,
First Circuit.

Argued Sept. 8, 1979.

Decided March 29, 1979.

William E. Persina, Associate Gen. Counsel, National Treasury Employees Union, Washington, D. C., with whom Robert M. Tobias, Gen. Counsel, Washington, D. C., was on brief, for plaintiffs-appellants.

Martin J. Ward, Gen. Atty., Office of the Regional Counsel, U. S. Customs Service, Boston, Mass., with whom John deRomoet, Regional Counsel, U. S. Customs Service, Boston, Mass., was on brief, for defendants-appellees.

Before KUNZIG,* Judge, U. S. Court of Claims, CAMPBELL and BOWNES, Circuit Judges.

KUNZIG, Judge.

This civilian pay case involves the right of certain employees of the United States Customs Service to bring suit to enforce the

* Sitting by designation.

terms of a policy pronouncement concerning overtime issued by the Commissioner of Customs on November 8, 1968. Judge Edward T. Gignoux of the United States District Court for the District of Maine (Northern Division) held that the court was without subject-matter jurisdiction over the claim and dismissed the complaint. We affirm.

The five plaintiffs-appellants were customs inspectors employed by the United States Customs Service at Bangor International Airport in Maine.[1] Each was a full time journeyman inspector. Prior to December 1, 1974, overtime tours of duty (those on Sundays, holidays, and during the hours of 12:00 midnight to 8:00 A.M. on weekdays) at the Bangor International Airport were only assigned to "when actually employed" (WAE)[2] employees after each journeyman inspector had been given an opportunity to accept the special overtime. In calendar year 1974 each plaintiff earned at least $20,000 in overtime pay.

On December 1, 1974, defendant Ingalls, then Acting District Director for the Portland District, instituted a change in the overtime staffing policy at the Bangor International Airport. Under the new policy, two WAE inspectors were assigned for each journeyman inspector who worked that tour of duty. As a result of this policy change, the plaintiffs were not assigned to work on a number of overtime jobs on occasions when they were willing and able to do so. In calendar year 1975, no plaintiff received more than $10,107 in overtime pay.

Plaintiffs filed a grievance pursuant to the Customs Service's agency grievance procedure. They charged that the policy change instituted by the Acting District Director violated Customs Service Circular INS–2–MI issued by the Commissioner of Customs on November 8, 1968. The subject of that circular was listed as "assignment of personnel to inspectional activities." Plaintiffs argued that the policy change was inconsistent with section III.D.4. of the circular.[3] The grievance examiner found in favor of the plaintiffs, but his recommendation was rejected by defendant Martin who, as the Director of the Personnel Management Division of the Customs Service, had the final authority to decide such matters.

Plaintiffs then timely filed this action, alleging a violation of Customs Service Circular INS–2–MI, in the United States District Court for the District of Columbia. On defendant's motion the case was transferred to the United States District Court for the District of Maine (Northern Division).

Plaintiffs after amending their complaint, asserted four grounds for jurisdiction: (1) 28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act); (2) 28 U.S.C. § 1361 (Mandamus); (3) 28 U.S.C. § 1331(a) (laws of the United States); and (4) 28 U.S.C. § 1346(a)(2) (executive regulations). In dismissing the complaint for lack of jurisdiction, Judge Gignoux held that: (1) the Declaratory Judgment Act does not extend the subject matter jurisdiction of the court; (2) the Mandamus statute does not confer

---

**1.** Plaintiffs Connell and Hodson retired from active service in 1975 and 1976 respectively.

**2.** WAE employees are part-time workers. They are generally not eligible for extra compensation under the Customs Overtime Act, *as amended,* 19 U.S.C. § 267 (1976), unless they work on a Sunday or holiday.

**3.** Section III.D.4. of the Circular reads:
    4. *Seasonal and W.A.E. Employees*
    Seasonal and "when actually employed" (WAE) employees may be assigned to extra compensation activities only when:
    (a) Emergencies arise requiring an immediate assignment and a qualified permanent full-time employee cannot be provided; or

(b) The volume of extra compensation assignments is such that qualified permanent full-time employees, in order to have time off, or to prevent overwork, require relief and there are no other qualified permanent full-time employees available; or
(c) In the opinion of the District Director, it becomes necessary from an administrative standpoint to assign seasonal or W.A.E. employees to extra compensation activities. Such instances, if on a regular recurring basis, shall be made the subject of a written explanation which shall be approved by the Regional Commissioner and retained for review by Bureau personnel.

subject matter jurisdiction on the court where otherwise none exists; (3) Customs Service Circular INS–2–MI does not constitute one of the "laws of the United States" under 28 U.S.C. § 1331(a); and (4) Customs Circular INS–2–MI does not constitute a "regulation of an executive department" under 28 U.S.C. § 1346(a)(2).

In this court, plaintiffs have challenged only these latter two holdings [(3) and (4)].[4]

We agree with Judge Gignoux that the Customs Service Circular at issue was not promulgated pursuant to the type of statutory authority necessary for a right to judicial enforcement. This policy pronouncement, or Circular, is therefore an insufficient basis for subject matter jurisdiction under either 28 U.S.C. § 1331(a) [laws] or § 1346(a)(2) [regulations], and plaintiffs' cause must fail.[5]

■ Initially we note that for jurisdictional purposes the criteria which should be applied in determining whether Customs Service Circular INS–2–MI is one of the "laws of the United States," is the same as that which should be applied to determine whether the circular is "a regulation of an executive department." It is beyond dispute that validly issued administrative regulations or executive orders may be treated as "laws of the United States" under § 1331(a). *See, e. g., Farmer v. Philadelphia Electric Company,* 329 F.2d 3 (3rd Cir. 1964).

Fundamentally, the issue is whether this type of policy pronouncement is a proper basis for suit in the federal courts. It is obviously a question of degree. If, on the one hand, the Commissioner of Customs issued a simple flyer announcing the showing of free movies every Wednesday night,

could the employees of the Customs Service bring suit in federal court to enforce the terms of that policy pronouncement if the movies were not shown? Clearly such a basis for suit was never contemplated. However, on the other hand, a policy pronouncement issued pursuant to a specific grant of statutory authority, and promulgated in accordance with the procedural and publication requirements of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–53 (1976), would clearly be a proper basis for suit in the federal courts. Our problem: where to draw the line?

Customs Service Circular INS–2–MI does not match either of these extremes. We are presented with the issue of where along the continuum between a mere flyer or leaflet and a formal regulation issued pursuant to specific statutory authority this Circular lies.

Plaintiffs argue that we need only focus on the regulatory nature of the pronouncement at issue almost as if there were magic in the mere use of the word "regulation." They contend that Circular INS–2–MI is clearly a regulation as the concept is generally described in the APA. Although plaintiffs admit that not all agency pronouncements are actionable in federal court, they contend that when an agency issues a document to the public which is regulatory in nature and issued pursuant to statutory authority, and the agency acts in violation of the policy stated in that document, the individuals harmed have rights to enforce the policy in federal court.

■ Defendants contend that any statutory authority which the Commissioner of Customs had to issue Circular INS–2–MI is too remote to make this policy pronounce-

---

4. 28 U.S.C. § 1331(a) reads in pertinent part:
   (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States, . . .
   28 U.S.C. § 1346(a)(2) reads in pertinent part:
   (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \*

(2) Any other civil action or claim against the United Sates, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, . . .

5. We do not reach the question of formality of issuance as explained hereinafter in part II.

ment a proper basis for jurisdiction in the federal courts. They argue that even if the Commissioner of Customs had the statutory authority to issue this policy pronouncement as a binding regulation, it cannot serve as the proper basis for jurisdiction in the federal courts because it was not formally issued in accordance with the procedural and publication requirements of the APA.

The word "regulation" obviously has a different meaning in different legal contexts. *See, e. g., Kephart v. United States,* 75 F.Supp. 1020, 105 Ct.Cl. 646 (1948) (finding of Civil Service Commission is a regulation); *but see Walsh v. Butcher & Sherred,* 395 F.Supp. 597 (E.D.Pa.1975) (order of Securities and Exchange Commission is neither a regulation nor a law of the United States). The label attached to an agency pronouncement is not dispositive. *See Piercy v. Tarr,* 343 F.Supp. 1120, 1128 (N.D.Cal. 1972). We agree with plaintiffs' common sense admission that not all agency policy pronouncements which find their way to the public can be considered to be regulations enforceable in federal court. However, plaintiffs' suggested distinction—that only documents which are "clearly regulatory in nature" are enforceable in federal court—does little more than restate the question it purports to answer.

■ In essence, the court concurs with the district judge that in deciding whether a particular agency policy pronouncement may properly serve as the basis of jurisdiction under either § 1331(a) or § 1346(a)(2), we examine: (I) the statutory authority for promulgation, and (II) the formality of the promulgation. We weigh these factors to decide whether the policy pronouncement may be used as a basis of a suit in the federal courts.[6]

## I.

The most instructive precedents in this general area of statutory authority are those cases which consider whether particular executive orders may be the basis of jurisdiction under § 1331(a). In *Stevens v. Carey,* 483 F.2d 188 (7th Cir. 1973), the court considered whether Executive Order 10988, 27 Fed.Reg. 551 (January 18, 1962), was an adequate jurisdictional base. In holding that it was not, the court ruled that it had not been issued pursuant to statutory authority which provided for the implementation of statutory policy by the President. The court considered the document to be an expression of suggested guidelines relating to federal employment, and noted that the order did not either expressly or by implication contemplate a judicial remedy for the violation of its provisions. In analyzing the same executive order, the court in *Manhattan-Bronx Postal Union v. Gronouski,* 121 U.S.App.D.C. 321, 350 F.2d 451 (1965), *cert. denied,* 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966), stated that "[t]he President did not undertake to create any role for the judiciary in the implementation of this policy." *Id.* 121 U.S.App.D.C. at 326, 350 F.2d at 456. *See also Kuhn v. National Association of Letter Carriers,* 570 F.2d 757 (8th Cir. 1978); *Local 1498 American Federation of Government Employees v. American Federation of Government Employees,* 522 F.2d 486 (3rd Cir. 1975); *Kodish v. United Airlines,* 463 F.Supp. 1245 (D.Colo. 1979).

Judge Gignoux held that Customs Service Circular INS–2–MI was not issued pursuant to express statutory authority. Plaintiffs concede our court should consider the statutory authority for the issuance of Circular INS–2–MI, but they argue that the trial judge erroneously required there be a specific nexus between the statutory authority and the subject matter of the pronouncement at issue. Plaintiffs argue this requirement is inconsistent with the case of *Farmer v. Philadelphia Electric Company,* 329 F.2d 3 (3rd Cir. 1964), which they cite for the proposition that no specific nexus is required. However, *Farmer* is easily distinguishable. There the court did rule that certain Executive Orders and agency regulations promulgated under the authority of

---

**6.** As stated *supra* note 5, under the facts of the case at bar we do not find it necessary, for our ultimate decision, to reach the problem of formality of promulgation.

the Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 486(a) (1976), had the force of law. The court did not, however, rule that the district court had jurisdiction over the claim under § 1331(a). The court dismissed the complaint for failure to exhaust administrative remedies, *but did not decide the issue of jurisdiction. Id.* at 10.

Plaintiffs argued to the district court that either 19 U.S.C. § 66 (1976) (which authorizes the Secretary of the Treasury to draft forms of entry, bonds, and regulations pertaining to collection of customs duties and the warehousing of goods) or 19 U.S.C. § 267 (1976) (which authorizes the Secretary to establish by regulation the rates of compensation which carriers and shippers must pay the Customs Service for overtime work performed by inspectors) are grants of statutory authority to issue binding regulations on the subjects covered by Circular INS–2–MI. Judge Gignoux disagreed.

Now plaintiffs attempt to add to the above by arguing in this court that 5 U.S.C. § 301 (1976)[7] is also adequate statutory authority for the promulgation of Circular INS–2–MI.[8]

We conclude that none of these three statutes grants the Secretary the authority to issue binding regulations creating rights to work overtime which are enforceable by a federal court. Plaintiffs do not cite one word of legislative history which would indicate an intent on the part of Congress to give the Secretary the authority to create rights enforceable in federal court by is-

suance of a policy pronouncement like INS–2–MI.[9] Neither 19 U.S.C. § 66 nor 19 U.S.C. § 267 refers to matters such as hiring decisions, staffing policies, or use of part-time employees. Plaintiffs' additional authority, 5 U.S.C. § 301, is applicable on its face to each and every military and civilian segment of the Executive branch of Government. This generalized grant of authority to all military and executive department heads is so broad and non-specific that we cannot reasonably conclude Congress intended this statute to serve as the sole basis for jurisdiction in the federal courts for this internal policy pronouncement.

The language of these statutes cannot be read as contemplating the possibility that by issuing this type of Customs Circular (INS–2–MI), the Commissioner of Customs created a right in favor of the plaintiffs, giving them a preferential option to overtime tours of duty to the exclusion of part-time workers which could be enforced against government officials and result in a money judgment against the United States.

## II.

We now turn to the *form* of promulgation as discussed by Judge Gignoux. Since we have concluded that there was no statutory authority to issue a policy pronouncement like INS–2–MI which would create a right enforceable in federal court, it is unnecessary to reach the question of formality needed in the promulgation of the Circular.[10]

---

**7.** The statute reads in pertinent part:

The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. . . .

**8.** In addition, we note this argument was not made in the court below and cannot be raised for the first time on appeal. We treat this argument only as a matter of courtesy and not of right.

**9.** *Cf. Paramount Farms, Inc. v. Morton,* 527 F.2d 1301 (7th Cir. 1975). In that case, the court held that the provisions of § 4561 of the Uniform Relocation Assistance and Real Prop-

erty Acquisition Policy Act of 1970. 84 Stat. 1894, 42 U.S.C. § 4601 *et seq.* (1976), were mere guidelines which Congress did not intend to be enforced by the federal courts.

**10.** It does not appear that the Circular was ever intended to create any right to judicial enforcement. It contains some broad statements of policy. For example, one of the policies and objectives enumerated in the discussion of the provision of overtime services was "to give the most reasonable and uniform service possible at *minimum costs.*" (emphasis added). This is the policy that the Acting District Director was attempting to fulfill when he instituted the new overtime staffing ratios, a policy scarcely aided and abetted by the use of personnel receiving the highest and most costly overtime. Under

The district judge rejected defendants' argument that in order to give jurisdiction under either § 1331(a) or § 1346(a)(2), an agency policy pronouncement must be promulgated pursuant to the procedural and publication requirements of the APA, but held that the promulgation of Circular INS–2–MI lacked any of the formality which is necessary for the Circular to serve as the basis of jurisdiction in the federal courts. We leave the question of how much formality is needed for a policy pronouncement to be the basis of a federal court action until another day.

■ In summary, for the reasons outlined *supra,* we conclude that Customs Service Circular INS–2–MI does not constitute one of the "laws of the United States" under § 1331(a) or "any regulation of an executive department" under § 1346(a)(2). Thus the Circular is not an adequate basis for subject-matter jurisdiction in the federal court. Notwithstanding that a rule or regulation may be enforceable *within* an agency, that does not address the issue here, namely its enforceability in the *courts of the United States.* Plaintiffs have failed to establish that the Customs Service Circular on which they base their entire case has sufficient statutory backing to permit suit thereon in the federal courts. Because of our holding in (I), we find it unnecessary to

reach (II): the problem of formality of promulgation.

Accordingly, we hold upon careful consideration of the pertinent law, all briefs and submissions and after oral argument that the judgment of the district court dismissing the complaint is AFFIRMED.

LEVIN H. CAMPBELL, Circuit Judge (concurring).

It may well be that my colleagues are correct in concluding that Circular INS–2–MI is neither a law nor a regulation. I am unsure whether the distinction between 28 U.S.C. §§ 1331 and 1346(a)(2) [1] should be considered immaterial for jurisdictional purposes, but agree that it is doubtful whether the Circular in issue here is either a regulation or a law. It was a managerial directive dealing with personnel assignments that was not issued as a regulation and that apparently could be changed at will. Unlike other Customs Service policies as to overtime work, *see* 19 C.F.R. § 24.16, it was not published in the Federal Register and does not appear in the Code of Federal Regulations.

It seems to me that in any event plaintiffs have failed to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); *see Farmer v. Philadelphia Electric Co.,* 329 F.2d 3, 8–10 (3d Cir. 1964).[2] Not every dispute over the interpretation of

these circumstances, we suggest that the statements in the Circular were not meant as hard and fast rules, but rather as broad guidelines to be balanced and accommodated.

1. The defendants argue that 28 U.S.C. § 1346 cannot be invoked, as plaintiffs have failed to name the United States as a party. *See Harbolt v. Carpenter,* 536 F.2d 791, 791 n. 1 (8th Cir. 1976). But the defendants are officers of the United States Customs Service sued in their official as well as individual capacities, and at least some of the relief sought (damages, declaratory and injunctive relief) would run against the United States if awarded, *see Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963). Leaving aside the technical questions of the adequacy of the plaintiffs' complaint, § 1346 would appear to be a proper basis for jurisdiction, if the plaintiffs could establish that Circular INS–2–MI is a "regulation of an executive department." (Plaintiffs have not argued that the Circular

was part of their employment contract, and have not tried to assert 28 U.S.C. § 1346(a)(2) jurisdiction on the ground that their suit is based on "any express or implied contract with the United States.")

2. While *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), did not involve any question whether the provisions sued under were in fact laws of the United States, the general principle of that case lends some support to this approach. In *Bell,* the Supreme Court stated that federal courts should accept jurisdiction where a complaint is drawn so as to seek recovery under a law of the United States, and should decide separately whether the plaintiffs have a federal cause of action. *Id.* at 681–83, 66 S.Ct. 773. As deciding whether an agency document is a "regulation" appears to require some discussion of whether the document creates any judicially enforceable rights, this analysis seems appropriate here.

federal personnel policies is necessarily to be resolved by the judicial branch. *See Manhattan-Bronx Postal Union v. Gronouski,* 121 U.S.App.D.C. 321, 326–27, 350 F.2d 451, 456–57 (1965). Circular INS–2–MI is an in-house circular written for in-house distribution and use; it is directed at supervisory personnel, to guide them in assigning work. I read it as having been issued more for the administrative convenience and benefit of the agency than for the overriding benefit of the employees of the Custom Service, and I would leave its interpretation to the Commissioner of Customs. *See Zabala Clemente v. United States,* 567 F.2d 1140, 1144–45 (1st Cir. 1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978). Any other view would hamper seriously the ability of departmental administrators to communicate freely and flexibly with the employees of their departments by means of written directives.

To interpret Circular INS–2–MI as creating rights that an aggrieved employee could enforce in court would, moreover, be inconsistent with the grievance procedures under which plaintiffs have proceeded to date. Under that procedure, the Director of the Personnel Management Division of the Customs Service had the final authority to act on plaintiffs' grievance, and was free to reject the findings of the Grievance Examiner. Civil Service Regulations expressly provide that the Director's decision is non-reviewable by the Civil Service Commission. *See* 5 C.F.R. § 771.118. Thus the administration of the personnel policies in issue here is committed to the agency's grievance procedures and, ultimately, to the Director of Personnel. Plaintiffs have pointed to nothing, either in the Circular or elsewhere, suggesting that they are entitled to bring an original action to have a court interpret and enforce the policies reflected in the Circular.