Emilio Cruz **GONZALEZ**, Plaintiff,

v.

Robert **CHASEN** et al., Defendants.

Civ. No. 80–2197.

United States District Court,
D. Puerto Rico.

Nov. 17, 1980.

Carlos López de Azua, Hato Rey, P. R., for plaintiff.

Jose A. Quiles, U. S. Atty., Hato Rey, P. R., for defendants.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is an action brought under 28 U.S.C. Section 1331, in which plaintiff seeks in-

junctive relief to prevent his proposed dismissal from the U.S. Customs Service. Plaintiff alleges that the removal is contrary to the Treasury Department's applicable regulations,[1] since according to said regulations none of the charges filed at the administrative level against plaintiff justify removal.

Defendants filed a motion for dismissal of the complaint alleging that this Court lacks subject matter jurisdiction because 28 U.S.C. Section 1331 does not apply to the present case. Section 1331(a) states that "the district courts shall have original jurisdiction of all civil actions (that) ... arises under the Constitution, laws or treaties of the United States ..."[2]

■ It has been firmly established that the reference in Section 1331(a) to "laws ... of the United States", means that there is jurisdiction of a claim arising under an Act of Congress or an administrative regulation or executive order made pursuant to an Act of Congress. Wright, Miller and Cooper, *Federal Practice and Procedure*: Jurisdiction, Section 3563; see also *Farmer v. Philadelphia Electric Co.*, 329 F.2d 3 (3rd Cir., 1964). Therefore, "it is beyond dispute that validly issued administrative regulations ... may be treated as "laws of the United States" under Section 1331(a)." *Chasse v. Chasen*, 595 F.2d 59, 61 (1st Cir. 1979).

The controversy in the present case is whether plaintiff's dismissal from the Customs Service is warranted under the circumstances of this case pursuant to Treasury Department's applicable regulations, i. e. Chapters 751 and 752 of the Treasury Personnel Manual, which are the ones that deal with disciplinary actions. We must, therefore, determine if those regulations are a proper basis for suit in the federal courts. The test to be used was established by the United States Court of Appeals for the First Circuit in *Chasse v. Chasen, supra*, at page 62.

In essence, the court concurs with the district judge that in deciding whether a particular agency policy pronouncement may properly serve as the basis of jurisdiction under Section 1331(a) ... we examine: (I) the statutory authority for promulgation and (II) the formality of the promulgation. We weigh these factors to decide whether the policy pronouncement may be used as a basis of a suit in the federal courts.

The statutory authority for promulgation of the regulations at issue is found in 5 U.S.C. Section 301, which reads in its pertinent part:

The head of an executive department ... may prescribe regulations for the government of his department, *the conduct of its employees*, (and) the distribution and performance of its business ... (Emphasis ours)

We should now address the formality of the regulation factor. Although these regulations are not published in the Federal Register, and 5 U.S.C. Section 552 requires that the regulations of the Federal Administrative agencies be published in that Register, 5 U.S.C. Section 552(b)(2) specifically establishes that this section "does not apply to matters that are related solely to the internal personnel rules and practices of an agency."

Chapter 751 of the Treasury Personnel Manual "contains the instructions for the uniform handling of employee misconduct cases ... prescribes the procedures for the taking of disciplinary actions ... (and) supplements the provisions of Chapters 751 and 752 of the Federal Personnel Manual and applicable Executive orders." Subchapter 1(1–1).[3] Among other things, it specifically prescribes the disciplinary action authority, the officers' responsibilities, and the types of disciplinary actions. Subchapter 1 (1–5–,

---

1. Treasury Personnel Manual, Chapters 751 and 752. Plaintiff's Exhibits 6 and 7.

2. This jurisdiction was originally granted by the Constitution, in its Article III, Section 2, to the Supreme Court, but was later on extended

to the District Courts by the Congress. *Osborn v. Bank of the United States*, 9 Wheat. 738, 22 U.S. 738, 6 L.Ed. 204 (1824).

3. Plaintiff's Exhibit 6, p. 3.

6 and 7)[4] of Chapter 752[5] deals with the adverse action procedure and with the right and procedure to appeal.

Plaintiff alleges that the dismissal action is contrary to Subchapter 2–5(c) of Chapter 752[6] (Basis for adverse action), which is similar to Subchapter 1–3(b) of Chapter 751[7] (Objectives of disciplinary actions), and which states in part that "adverse actions used as a means (sic) of disciplining employees shall be applied consistent with the principle that the penalty shall match the offense"; to Chapter 751, subchapters 1–4(c)[8] (Disciplinary action policy), which states that "disciplinary actions in order to be effective must be timely" and that "it is simply equity to avoid keeping an employee in a state of uncertainty"; and 1–7(e)[9] (Types of disciplinary penalties), which states that "in deciding whether removal is an appropriate penalty action, the resulting loss of the time and money spent in training and developing the employees to do his job should be considered as well as whether a less severe penalty might accomplish the desired result—a fully effective employee whose conduct and compliance with requirements will be assured in the future", and that "the effect of the removal on the employee's ability to obtain another position should also be considered."

In brief, the regulations at issue were promulgated to handle uniformly all the employee misconduct cases in the Treasury Department and they contain not only guidelines but also specific instructions on the disciplinary procedure.

■ After weighing the factors enunciated in *Chasse v. Chasen, supra*, we find that said factors have been met by the regulations at issue. Therefore, we conclude that said regulations may be used as a basis for an action in this Court under 28 U.S.C. Section 1331.

Defendant further asserts that judicial review of the agency's action is barred until administrative proceedings have been exhausted. However, what we are here concerned with is the authority of the court to grant interim injunctive relief pending an administrative determination on the merits. This issue is related to, but quite distinct from, the issue of the necessity for the exhaustion of administrative remedies before an adjudication on the merits may be obtained in a court. Clearly, what is sought in an action such as the case at bar is not a determination on the merits that will be binding upon the administrative agency before that agency has had an opportunity to complete its procedures, but an interim form of relief to prevent irreparable damage to the parties or the public interest pending the outcome of an administrative determination.

The All Writs Act, 28 U.S.C. Section 1651(a) empowers the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." To this effect in *McClellan v. Carland*, 217 U.S. 268, 280, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910), the Court held: "(w)e think it the true rule that where a case is within the appellate jurisdiction of the higher court a writ ... may issue in aid of the appellate jurisdiction which might otherwise be defeated ..." And in *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943) the Court stated that the authority of the appellate court "is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected." Similarly, decisions of the United States Supreme Court "have recognized a limited judicial power to preserve the court's jurisdiction or maintain the *status quo* by injunction pending review of an agency's action through the pre-

---

4. *Idem*, pp. 5, 6 and 8.

5. See Plaintiff's Exhibit 7.

6. *Idem*, p. 6.

7. Plaintiff's Exhibit 6, p. 4.

8. *Idem*.

9. *Idem*, p. 9.

scribed statutory channels ... Such power has been deemed merely incidental to the court's jurisdiction to review final agency action ..." *Arrow Transp. Co. v. Southern R. Co.*, 372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 991 n. 22, 10 L.Ed.2d 52 (1963). There the Court cited *Scripps-Howard Radio Inc. v. Federal Trade Communications Comm'n*, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); *West India Fruit & S. S. Co. v. Seatrain Lines, Inc.*, 170 F.2d 775 (2 Cir. 1948); and *Board of Governors v. Transamerica Corp.*, 184 F.2d 311 (9th Cir.) cert. den., 340 U.S. 883, 71 S.Ct. 197, 95 L.Ed. 641 (1950).

■ Certainly, the power to issue such relief is necessary because of the possibility of irreparable harm, but as the Court made clear in *Scripps-Howard Radio, supra*, the exercise of the power is discretionary:

> If the administrative agency has committed errors of law for the correction of which the legislature has provided appropriate resort to the courts, such judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made. (But) ... "(a) stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. (Citation omitted.) It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of the particular case." (Citations omitted.) [10]

Nevertheless, cases such as those cited herein were distinguished by the Court in *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1973), which dictated that in cases dealing with the availability of equitable relief to discharged government employees several factors must be given serious consideration. These factors were:

"The District Court, exercising its equitable powers, is bound to give serious weight to the obviously disruptive effect which the grant of the temporary relief awarded here was likely to have on the administrative process. When we couple with this considertion the historical denial of all equitable

relief by the federal courts in cases such as *White v. Berry*, 171 U.S. 366, 18 S.Ct. 917, 43 L.Ed. 199 (1898), the well-established rule that the Government has been granted the widest latitude in the dispatch of its own affairs, *Cafeteria Workers v. McElroy*, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961), and the traditional unwillingness of courts of equity to enforce contracts for personal service ..., 5 A A. Corbin, Contracts Section 1204 (1964), we think that the Court of Appeals was wrong in routinely applying to this case the traditional standards governing more orthodox 'stays'. See *Virginia Petroleum Jobbers Assn. v. FPC*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958)." *Sampson, supra*, 415 U.S. at 83–84, 94 S.Ct. at 949–950.

In *Sampson v. Murray, supra*, a probationary federal employee sought a temporary restraining order from a District Court to prevent her employment termination. At the same time her administrative appeal with the Civil Service Commission was pending. A temporary restraining order was issued by the District Court and later continued in force indefinitely when the termination officer refused to appear and testify at a hearing scheduled on a motion for preliminary injunction. The Court of Appeals for the District of Columbia upheld the District Court, but the Supreme Court of the United States reversed.

The Court held that the circumstances of that case did not constitute the irreparable injury that is necessary for the extraordinary relief of a preliminary injunction. Specifically, the Court held that even if there had been a showing that plaintiff would suffer loss of income and damage to her reputation as a result of her termination, such proof would fall "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case." Id., at 91–92, 94 S.Ct. at 953.

However, the Court did recognize "that cases may arise in which the circumstances surrounding an employee's discharge to-

---

**10.** 316 U.S., at 10–11, 62 S.Ct., at 880.

gether with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found" which would justify the issuance of preliminary injunctions in employment-termination cases.

Accordingly, a careful analysis of the case of bar will reveal that this is a genuinely extraordinary situation with uniquely distinctive circumstances which merits the issuance of a preliminary injunction.

## FINDINGS OF FACT

Plaintiff is forty years old, has been married for fifteen years and has three children ranging from five to thirteen years of age. He is the sole source of income for his family and supports his elderly parents as well. He graduated *magna cum laude* (high honors) from the University of Puerto Rico in 1962. He is active in several professional, civic and religious organizations.

Plaintiff, a permanent employee, has been employed by the United States Customs Service during the last seventeen years. He entered the Federal Service as a Customs Examiner, GS–7 in November 1963 and has steadily progressed to his present position as a Senior Special Agent, GS–13. Plaintiff has the use of a government vehicle while so employed as special agent.

On May 21, 1979 co-defendant Rafael Rivera Rodríguez, Special Agent in charge of the San Juan Office, served plaintiff a letter informing him that his duties were to be restricted to the San Juan Office of the United States Customs Service and that use of the government vehicle assigned to him was being restricted to travel from his residence to work.[11] He was further informed that he was under investigation by the Office of Management Integrity of the United States Customs Service and that all of his

Ponce cases were being reassigned. The first investigation concluded without charges of any nature being filed against Special Agent Cruz González.

Subsequently, on May 1, 1980 co-defendant Rivera notified the plaintiff that he was no longer under investigation on the original grounds, but that a second investigation was being conducted for unauthorized use of a governmental vehicle. On July 10, 1980 plaintiff was advised that as a result of the second investigation, co-defendant Rivera was proposing to his superior, co-defendant Rosemblatt that the plaintiff be dismissed from the United States Customs Service.[12] The plaintiff filed a written reply[13] to the charges on August 15, 1980, and made an oral presentation on September 11, 1980.

Thereafter, on October 5, 1980, co-defendant Rosemblatt notified the plaintiff by letter that he would be removed from the United States Customs Service effective October 17, 1980. He was further notified that he could file a formal grievance before the Merit System Protection Board within twenty (20) days of the effective date of removal. Through a telephone conversation on October 5, 1980, Mr. Kerry Thomas, Esq., Assistant Regional Counsel of the United States Customs Service notified plaintiff that the dismissal would not be held in abeyance pending the final outcome of the administrative determination. Confronted with this situation, plaintiff brought this action seeking a temporary restraining order and a preliminary injunction restraining the defendants and their agents from dismissing the plaintiff pending the final adjudication of the formal grievance before the administrative agency. A temporary restraining order was issued on October 16, 1980 prohibiting the defend-

---

11. However, Mr. Rivera testified that plaintiff on official business could have travelled to the cities of Carolina, Isabela and Humacao or any other city which is within the jurisdiction of the San Juan Office.

12. A copy of the notice containing the five charges against plaintiff was attached as Exhibit A of the verified complaint. Even though Rivera apparently was the proposing officer for

plaintiff's dismissal, we cannot overlook the fact which surfaced from Rivera's own testimony that this document was prepared by the Regional Office of the U. S. Customs Service and sent to Rivera for his signature and presentation.

13. Exhibit B of the verified complaint.

ants or their agents from terminating plaintiff's employment pending a hearing on plaintiff's request for a preliminary injunction. Said hearing was held on October 23, 1980.

At the hearing, the evidence clearly indicated that plaintiff's performance was always above satisfactory and that he was an excellent law enforcement officer.

Rivera testified that he had worked with plaintiff for fifteen years and has been supervising him for the last five years. He evaluated plaintiff's job performance on three occasions and gave him ratings of 4's (above average) and 5's (excellent).[14] He also testified that plaintiff's performance has been consistent, i. e. above satisfactory, and that even though plaintiff was under investigation he was assigned complex and important cases, such as the General Electric criminal investigation.

In his testimony, Rivera admitted that, had it not been for this incident,[14-A] he would consider plaintiff a "valuable asset" to his investigative office. He described plaintiff as a very intelligent, capable and responsible individual.

Another witness, Mr. Jorge Marcano, a U. S. Customs Service employee, testified that he had known plaintiff for ten (10) years and that plaintiff enjoyed a good reputation in the law enforcement community.

The five charges filed against plaintiff are based on four trips that he made to the city of Ponce, Puerto Rico. The uncontradicted facts are that the plaintiff did travel to said city in the government vehicle assigned to him during September and November of 1979. On three of the four occasions plaintiff transported an individual by the name of Angel Cordero in the official car. Based on this act, plaintiff was charged for transporting unauthorized persons in a government vehicle. The uncon-

troverted evidence on this point is that Angel Cordero is or was at that time a documented confidential informant for the U. S. Customs Service. Nevertheless, co-defendant Rivera testified that an agent may use a government vehicle to have a conversation with anyone.

Further evidence introduced at the hearing demonstrates that on at least two of the four occasions plaintiff informed his supervisor, co-defendant Rivera, of his intention to travel to Ponce in his official vehicle. Furthermore, plaintiff filed a written report of his trips to Ponce in the official "Record of Operation of Vehicle or Vessel" and his immediate supervisor never admonished nor informed plaintiff that his actions were in any way contrary to practice or regulations, neither was he informed that a repetition of the infraction could result in some sort of disciplinary action that could include dismissal from the Service. It was not until after the fourth trip that action was taken against him.

Plaintiff was also charged with improper use of annual leave. To this effect, on direct examination, co-defendant Rivera testified there was an informal policy as to the manner in which leave was taken. The agents in said office were only required to inform the clerk that they intended to take leave. Rivera further testified that the agents do not have a specific daily work period; that their work obligations are fulfilled as long as they "put in their eight hours".

On direct examination, co-defendant Rivera testified that he did not utilize the government vehicle assigned to him for personal use. However, plaintiff testified that he saw co-defendant Rivera in his official government vehicle as recently as October 14 and 15 of 1980 transporting his son to school.[15]

---

**14.** See Exhibit 2, Customs Form 188; performance appraisal. These are the highest ratings in the scale.

**14–A.** Referring to the alleged misuse of a government vehicle and annual sick leave.

**15.** Plaintiff took a photograph of Rivera with his son in his official government vehicle which was admitted as Exhibit 11. Furthermore, plaintiff offered additional evidence (which was not admitted) consisting of four witnesses for the purpose of establishing that it was the general practice in that office to use the

Upon plaintiff's dismissal, plaintiff's medical insurance will be cancelled and life insurance policy terminated. Plaintiff's five year old son suffers from asthma and has been hospitalized on two occasions. Plaintiff's medical plan covers the treatment for his son's condition. Furthermore, plaintiff's two daughters, ages 12 and 13, will be removed [16] from the school they have attended at Ft. Buchanan, P. R. since kindergarten, which is for children of federal employees. Plaintiff's wife has been a housewife for the last thirteen (13) years, hence plaintiff is the sole family income source. Plaintiff has debts amounting to $40,000.00 of which $27,000.00 constitute a mortgage on his home which will be foreclosed for failure to make payments.

Finally, the remarks in the Standard Form 50, Notification of Personnel Action, will prevent plaintiff from obtaining federal employment.[17]

## CONCLUSIONS OF LAW

■ It is now well settled that a preliminary injunction is an extraordinary equitable remedy *Sampson v. Murray, supra,* at p. 92 n. 68, 94 S.Ct. at p. 953 n. 68; *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 573 (5 Cir. 1974) to preserve the *status quo* until adjudication of the case on its merits *Morgan v. Fletcher,* 518 F.2d 236, 239 (5 Cir. 1975) but, of course, not every change in existing conditions warrants such relief. The burden is on the plaintiff to show the Court that an irremediably deteriorating condition threatens to thwart the Court's ability to render a proper final judgment on the merits. *Canal Authority of State of Florida v. Callaway, supra,* at 573, 576.

This burden is met by showing the existence of four necessary criteria:

(1) Irreparable injury because of the unavailability of an adequate remedy at law;

(2) Substantial likelihood of the plaintiff's success on the merits.

(3) Threatened injury to the plaintiff outweighs any possible injury to the defendant;

(4) Issuing a preliminary injunction will not work any disservice to the public interest. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local 70,* 415 U.S. 423 at 441, 443 [94 S.Ct. 1113 at 1125, 1126, 39 L.Ed.2d 435]; *Sampson v. Murray, supra,* 415 U.S. at 84 n. 53 [94 S.Ct. at 950 n. 53].

In considering whether these criteria have been met, the Court should use a sliding-scale, analysis, in which a much stronger showing on one or more of these factors lessens the amount of proof required for the remaining factors. *State of Texas v. Seatrain International, S. A.,* 518 F.2d 175, 180 (5th Cir. 1975); *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917, 919–20 (3rd Cir. 1974). Nevertheless, the principal and overriding prerequisite is irreparable harm resulting from the absence of an adequate legal remedy. *Sampson v. Murray, supra,* 415 U.S. at 88–92 and n. 68, 94 S.Ct. at 951–953 and n. 68. With this in mind, we proceed to examine the four criteria and determine if it applies to the circumstances of this case by the evidence admitted.

*1. Irreparable Injury.*

A party moving for preliminary injunctive relief must carry the burden of show-

---

government vehicles for unofficial business similar to the one for which he is now being charged. However, the ruling excluding that evidence may be re-examined in the permanent injunction hearing, if such hearing becomes necessary.

**16.** Even though at the hearing the United States Attorney made a representation to the effect that plaintiff's children would probably not be dismissed until the end of the semester, no real assurance was given, and such repre-

sentation is clearly not binding on the Government.

**17.** This situation is further aggravated by the fact that Puerto Rico has a high rate of unemployment. In 1978, Puerto Rico "had a record rate of unemployment conservatively estimated at 23% in the rural areas and 18.5% throughout the Commonwealth". *The Commonwealth of Puerto Rico v. Alfred L. Snapp & Sons Inc., et al.,* 632 F.2d 365, 4 Cir. 1980.

ing irreparable injury. *Sampson, supra; Yakus v. United States,* 321 U.S. at 439–440 (1944), but "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958), quoted with approval in *Sampson v. Murray, supra,* 415 U.S. at 90, 94 S.Ct. at 953.

In *Sampson,* the Court specifically held that even if there had been a showing that plaintiff would suffer loss of income and damage to her reputation as a result of her termination, such proof would fall "far short of the type of irreparable injury which is a necessary predicate to the issuance of a preliminary injunction in this type of case." Id. at 91–92, 94 S.Ct. at 953.

Accordingly, in several cases since *Sampson, supra,* courts have held it improper to issue preliminary injunctions in employment termination cases because there was no showing of irreparable injury. Notwithstanding, those courts as well as the Supreme Court in *Sampson,* allowed for the distinguishing circumstances of extraordinary cases. Furthermore, other courts have found uniquely distinctive circumstances to justify the issuance of preliminary injunctions in employment termination cases.

In other words, *Sampson* did not establish a *per se* rule and therefore, it is still the duty of the Courts to scrutinize and weigh the facts in each particular case to properly determine if the remedy requested can be made available to the plaintiff.

In a case concerning a law enforcement employee, *Keyer v. Civil Service Commission of City of New York,* 397 F.Supp. 1362 (E.D.N.Y.1975), the District Court enjoined a summary dismissal of plaintiffs who were non-probationary, permanent, civil service employees with unmarred records of at least satisfactory performance. Distinguishing *Sampson v. Murray* on its own expressly qualifying language, the Court held that the combination of the plaintiffs' discharge for non-probationary job status in a highly restricted job market for persons with the plaintiffs' experience and qualifications, together with the peculiarly handicapping stigma of dismissal in that profession, and the loss of attendant job benefits (such as health insurance, pension benefits, and reasonable expectation of advancement), as well as the "total denial of due process" constituted sufficient irreparable injury to justify extraordinary relief. Id. at 1370–72.

Likewise in *Parks v. Brennan,* 389 F.Supp. 790 (N.D.Ga.1974) the Court found that the inadequacy and inappropriateness of traditional remedies, plus the finality of the administrative action, constituted the necessary irreparable harm. Moreover, the Court relied upon *Drew v. Liberty Mutual Insurance Company,* 480 F.2d 69 (5th Cir. 1973), cert. den. 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974), where the plaintiff was the sole family income source, a case which the Fifth Circuit in *Morgan v. Fletcher,* 518 F.2d 236 (5th Cir. 1975) at 240 n.11, suggested as possibly sound contradiction to *Sampson v. Murray.* Similarly, in *Lake Mich. Col. Fed. of Teach. v. Lake Mich. Com. Col.,* 390 F.Supp. 103 (1974), the District Court held that "(t)he loss of the breadwinner's wages, even for a short period of time, constitutes specific irreparable damage." Id., at 138.

*Morgan v. Fletcher, supra,* involved a tenured Federal career service employee who received thirty days advance notice of termination, but being entitled to a post-termination hearing on the rightfulness of her discharge, sought a preliminary injunction from the District Court prior to her removal. The plaintiff's income represented 45% of the total family income, the loss of which would probably have led to foreclosure of her home; and her termination would result in loss of her health insurance benefits, while she was in an emotionally overwrought condition that might conceivably require such benefits. Id., at 238–239. Relying upon *Sampson v. Murray,* the Fifth Circuit reversed the District Court, holding that the facts did not constitute irreparable injury warranting the extraordinary relief requested: plaintiff was not the sole source of her family's income; she had a statutory

right to back pay if she prevailed; and any urgent need for medical insurance was at best "conjectural only." Id. at 240 and n. 11.

In *Wallace v. Lynn*, 507 F.2d 1186 (D.C. Cir.1974) the Court of Appeals affirmed the District Court's denial of a preliminary injunction but the employees were only to be suspended from one to five days for conceivably genuine insubordination. They also had deliberately bypassed available administrative remedies, before filing in the District Court. Based on the doctrine of administrative exhaustion, the District Court held that plaintiff failed to show a "sufficient probability of success on the merits." Id., at 1189. The District of Columbia Circuit affirmed citing *Sampson v. Murray*, and suggested that it disagreed with the District Court's finding of irreparable injury, inasmuch as back pay, retroactive reinstatement and expungement of the personnel files were available. Id., at 1188 and n. 8.

On the other hand, in *Assaf v. University of Texas System*, 399 F.Supp. 1245 (S.D. Tex.1975), the District Court issued a preliminary injunction because the defendant's violation of its own rules and regulations concerning notice of non-reappointment to a non-tenured health service professor gave him a reasonable expectation of continued employment; and consequently, the deprivation of that continued employment would require procedural due process. Distinguishing *Sampson v. Murray*, the Court found irreparable injury shown. In addition to loss of income, the plaintiff would have suffered a loss of reputation within the academic community as well as a denial of access to research resources virtually necessary to a scientific academician, both of which are insusceptible of compensatory measurement. Id., at 1251.

Finally, the Supreme Court in *Sampson v. Murray, supra*, while holding that "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury," Id. 415 U.S. at 90, 94 S.Ct. at 952, expressly stated, however, that injunctive relief is not precluded "in genuinely extraordinary" cases where "the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." Id. at 92 n. 68, 94 S.Ct. at 953 n. 68.

 Unlike the probationary employee in *Sampson v. Murray, supra*, plaintiff is a non-probationary, permanent employee, whose good behavior and above satisfactory performance justifies a reasonable expectation of continued employment in the circumstances of this case.

Unlike the speculative loss in *Morgan v. Fletcher, supra*, at 240, plaintiff, whose son has a serious medical history, will be deprived of health insurance coverage that was available through his job. Furthermore, two of his children who are presently attending a school exclusively for children of federal employees, will be removed from said school. Also, unlike *Morgan, supra*, where plaintiff's income represented 45% of the total family income, plaintiff herein is the sole breadwinner in the family. Thus, the loss of plaintiff's income will certainly lead to the foreclosure of his home.

Like plaintiff in *Keyer v. Civil Service Commission of City of New York*, by training and experience, plaintiff is qualified for employment in a fairly limited and specialized field-law enforcement work. As has been pointed out previously, the high rate of unemployment in Puerto Rico provides limited opportunities for employment in plaintiff's occupational category. Further, as in *Keyer*, plaintiff will be handicapped in his efforts to secure other employment by the stigma of his dismissal as a law enforcement officer, "an occupation peculiarly susceptible to such a stigma." Id., at 1372.

In light of the foregoing, this Court finds that plaintiff has met his burden of proof by showing the existence of irreparable harm. Far from any one mere fact in itself being irreparable harm, we hold that the totality of the circumstances surrounding plaintiff's dismissal demonstrably constitutes the very kind of irreparable injury that requires this extraordinary relief.

### 2. Substantial Likelihood of the Plaintiff's Success on the merits.

The importance that can be attached to irreparable injury should be less when the probability of success is greater. Therefore, even a "possible" irreparable injury has been held to suffice if there is a strong probability of success on the merits. See *Blackwelder Furniture Company of Statesville, Inc. v. Seilig Manufacturing Company Inc.*, 550 F.2d 189, 195 (4th Cir. 1977); *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 923 (3rd Cir. 1974); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974); *District 50, United Mine Workers v. United Mine Workers*, 134 U.S. App.D.C. 34, 412 F.2d 165, 168 (1969); *Packard Instrument Co. v. ANS, Inc.*, 416 F.2d 943 (2d Cir. 1969); *Wright and Miller, Federal Practice and Procedure* : Civil, Section 2948, p. 455.

In this case, plaintiff has a strong probability of eventual success in the litigation, either on appeal or on judicial review, if necessary. Plaintiff's main claim is that his dismissal is contrary to the applicable regulations that prescribe the disciplinary actions, i. e. Chapters 751 and 752 of the Treasury Personnel Manual. His contention is that in accordance with said regulations his infractions do not warrant a dismissal. As we stated above, these regulations apply to all the employee misconduct cases in the Treasury Department and, as we held above, they may be used as the statutory basis for this action.

▬ Defendants attempt to dismiss plaintiff from his permanent job because of four unauthorized trips that he made on a government's vehicle to the city of Ponce, P. R. on September and November of 1979. Although the imposition of disciplinary sanctions to a federal department employee is a discretionary duty of the head of the department, and ordinarily this Court will not interfere with the exercise of an administrative officer's discretion, this Court will review and will not hesitate to overturn an administrative officer's determination that is a clear abuse of discretion. See *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961); *Dismuke v. United States*, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561 (1936); *Reece v. United States*, 455 F.2d 240 (9th Cir., 1972); *Knight Newspapers, Inc. v. United States*, 395 F.2d 353 (6th Cir. 1968); *Schreiber v. United States*, 129 F.2d 836 (7th Cir., 1942). While equity will not ordinarily attempt to control discretion, discretionary powers of public officers which are exercised arbitrarily, maliciously, in bad faith, and without a right purpose are unlawful, and one suffering irreparable injury from such acts may have them enjoined. See from states jurisprudence *Hines v. Independent School District* (Okl.), 380 P.2d 943 (1963); *Headdon v. State Highway Department*, 197 S.C. 118, 14 S.E.2d 586; *Speyer v. School District*, 82 Colo. 534, 261 P. 859, 57 A.L.R. 203; *State ex rel. Griffith v. Mowry*, 119 Kan. 74, 237 P. 1032; *Moore v. Porterfield*, 113 Okl. 234, 241 P. 346 (1925).

In this case, defendant's action seems to be arbitrary, not in good faith and contrary to the applicable regulations. Subchapter 1–6(b) of Chapter 751 [18] states that:

The immediate supervisor will:

1– Take all steps possible to prevent situations from reaching the stage where disciplinary action is required;

2– consider carefully, before taking or recommending disciplinary action, the total effect of the proposed action upon both the employee being disciplined and upon the other employees in the organization;

3– admonish employees whenever necessary. . . .

In the case at bar, although the supervisor, co-defendant Rafael Rivera, knew of plaintiff's trips to Ponce, he did not admonish or warn him until after the fourth trip and after he had proposed the investigation and the same had started. His next step was to recommend the dismissal. This action is also contrary to Subsection 1–4(a) of

---

**18.** Plaintiff's Exhibit 6.

Chapter 751,[19] which establishes the policy that:

> Every reasonable opportunity is given an employee against whom disciplinary action has been taken to restore himself to the status of a fully effective Customs employee.

Dismissal, the harshest of all disciplinary actions against a permanent employee, is to be imposed upon plaintiff for a minor infraction without the opportunity that Subsection 1–4, Chapter 751 required.

Plaintiff's dismissal is also contrary to Chapter 751, subsections:

> 1–3(b) The action in each case must be fair, equitable, and no more severe than that which judgment indicates is required to accomplish these objectives. An action which is so severe that it is out of proportion to the offense arouses resentment and feelings of injustice, and destroys rather than promotes good discipline.

> 1–7(e) In deciding whether removal is an appropriate penalty action ... (it) should be considered ... whether a less severe penalty might accomplish the desired result—a fully effective employee whose conduct and compliance with requirements will be assured in the future. The effect of the removal on the employee's ability to obtain another position should also be considered.

It is also contrary to Chapter 752, subsections:

> 2–3(b) In those cases where counseling has proved ineffective, disciplinary actions, where possible, shall be utilized as an avenue toward employee rehabilitation. To this end, the Department subscribes to the concept of progressive discipline, where warranted. This would involve the use of oral and or written reprimands and disciplinary suspension prior to discharge in those instances where employee misconduct and/or work performance is not of such a significantly grave nature as to justify immediate removal ... Should disciplinary penalties less severe than discharge fail to bring the employee's conduct and/or work performance up to an acceptable level, removal then could be justified based on the employee's unresponsiveness to the prior disciplinary action(s).

As pointed out before, in this case there was no counselling to plaintiff, and no progressive discipline was used. The first sanction imposed to plaintiff for the four unauthorized trips to Ponce was the dismissal recommendation. His immediate supervisor, co-defendant Rivera, never admonished him, neither orally or in writing, although he was informed by the plaintiff of at least two of the four trips.

Subsection 2–5(c) of Chapter 752 states that "... adverse actions used as a means (sic) of disciplining employees shall be applied consistent with the principle that the penalty shall match the offense". Undoubtedly, the penalty proposed in this case, i. e. dismissal, is not proportionate to the infractions committed by plaintiff. For this kind of offense Congress has created a less severe penalty, which can be used as an example of a more proportionate penalty. 31 U.S.C. Section 638a states that:

> Any officer or employee of the Government who wilfully uses or authorizes the use of any government-owned passenger motor vehicle ... for other than official purposes or otherwise violates the provisions of this paragraph, shall be suspended from duty by the head of the department concerned, *without compensation for not less than one month*, and shall be suspended for a longer period or summarily removed from office if circumstances warrant. (Emphasis ours).

For all the reasons above stated we can conclude that the rules and regulations of the agency regarding the disposition of matters of this nature have not been followed. The proposed penalty is not proportionate to the violations committed by plaintiff and the penalty is so excessive, arbitrary and unjust that it shocks the conscience of this Court.

---

**19.** *Idem.*

Plaintiff's violations were minor infractions that can be considered trivial and inconsequential.[20] Comparing them with the proposed penalty, i. e. the dismissal, it can be stated that said penalty is an abuse of discretion.[21]

Therefore, we conclude that plaintiff has a strong probability of success on the merits of this case.

3. *Threatened injury to the plaintiff outweighs any possible injury to the defendant.*

■ The determination of whether to issue or not an injunction involves a balancing of the interests of the parties who might be affected by the Court's decision: the hardship on plaintiff if relief is denied as opposed to the hardship to defendant if it is granted. Wright and Miller, *Federal Practice and Procedure*: Civil, Section 2942. An injunction would be issued if the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant. *Morgan v. Fletcher*, 518 F.2d 236 (5th Cir., 1975); *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir., 1974). Thus, even where denial of a preliminary injunction will harm the plaintiff, the injunction should not be issued where it would work a great and potentially irreparable harm to the party enjoined, unless an overwhelming case in the plaintiff's favor is present on the merits and equities of the controversy. *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C.C.A., 1969); *International Association of Machinists v. Northeast Airlines, Inc.*, 473 F.2d 549 (1st Cir., 1972); Wright and Miller, *supra*, Section 2942.

As we stated above, plaintiff has a strong probability of succeeding on the merits of this case but, more than that, being plaintiff an effective employee who is rendering excellent services, the only harm that defendants could arguably suffer is the un-

likely disruptive effect which the granting of the preliminary injunction might possibly have on the administrative process.[22] See *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). However, such interim relief serves as an aid to the administrative process since by preserving the *status quo* it ensures that the final administrative determination will not be rendered ineffective by hasty procedures at an earlier stage.

The preliminary injunction is a necessary remedy to avoid irreparable damages to plaintiff; albeit a remedy that the Board cannot concede. Not resulting from the injunction any irreparable harm to defendants, this Court concludes that plaintiff's threatened harm outweighs by far any potential harm to defendants that would result from an injunction of their action dismissing plaintiff.

4. *Issuing the preliminary injunction will not disserve the public interest.*

The evidence uniformly establishes that plaintiff is a responsible and capable law enforcement officer; and additionally the Court finds that there exists no harm to defendants by allowing plaintiff to remain in his job pending a final administrative determination. Accordingly, we now hold that a preliminary injunction that provides interim relief to plaintiff will not work any disservice to the public interest; instead it may well affirmatively serve the public interest to continue to employ a law enforcement agent of plaintiff's high caliber.

### INJUNCTION

WHEREFORE, plaintiff's motion for a preliminary injunction is hereby granted and defendant's motion to dismiss is denied.

Defendants, their officers, representatives, agents, attorneys and all persons act-

---

20. See note 15, *supra*.

21. Defendants complete disregard of the applicable regulations of their own Department tends to show bad faith on their part, but we will not consider this until and if the case is brought back to us on judicial review.

22. The fact that it is a prohibitory injunction makes it less burdensome on the defendant. Wright and Miller, *Supra*, Sec. 2948.

ing in concert with them are hereby ordered to abstain, pending a final administrative determination, from implementing plaintiff's dismissal and consequently from interfering with or impeding the attendance of plaintiff's children at the school in which they are presently enrolled, that is, the Antilles Consolidated School System at Fort Buchanan.

IT IS SO ORDERED.